(96 South. 61)

**HILBURN v. McKINNEY.** (8 Div. 559.)

(Supreme Court of Alabama. April 12, 1923.)

1. **Ferries** ⬡⟿33—**Counts alleging negligence in failure to furnish safe boat held good as against demurrer.**

In suit to recover for the drowning of mules and loss of a wagon while such property was being ferried across a river, complaint, specifically averring that 'defendant was operating the ferry under a contract with the county whereby he agreed to provide a ferryboat and keep it in good repair and condition to transport persons and property without charge, was not demurrable as failing to aver that defendant did not furnish a safe boat.

2. **Ferries** ⬡⟿33—**That plaintiff retained control of mules drowned in crossing not defense to alleged failure to furnish safe boat.**

In suit to recover for drowning of mules and loss of wagon while being ferried across a river, where defendant denied recovery because plaintiff was alleged to have retained control of his mules and wagon, and was in control at the time of the accident, such defense might lessen the degree of care of defendant, but was not a complete defense.

3. **Pleading** ⬡⟿8(17)—**Plea stating conclusions, without sufficient statements of facts in support thereof, held defective.**

In suit to recover for the drowning of mules and loss of a wagon while being ferried across a river, a plea that plaintiff contributed by his own negligence to the loss, in that he negligently and improperly attempted to control the mules, and by his own negligent act in holding or attempting to hold them, frightened and caused them to run backwards and become unmanageable, without defendant's fault, is defective, as stating conclusions without sufficient statement of facts in support thereof.

4. **Ferries** ⬡⟿33—**Plea, alleging contributory negligence of owner of mules, showed no duty of plaintiff to call for defendant's help to control them.**

In suit to recover for the drowning of mules and loss of a wagon while being ferried across a river, a plea that plaintiff contributed to the loss, in that he negligently hitched the mules to the wagon after the ferryboat had landed, without calling on defendant to help or aid in controlling them, well knowing they were easily frightened and unmanageable, *held* not to allege sufficient facts to show a duty of plaintiff to call on defendant for assistance.

5. **Ferries** ⬡⟿32—**Service of ferryman held not to be gratuitous.**

Where the consideration for the operation of a public ferry was paid by the county for the benefit of the citizens, the services of the ferryman were not gratuitous, so as to make him liable only for the consequences of gross negligence.

6. **Ferries** ⬡⟿33—**Use of highways leading to ferry proper consideration for jury on question of due care.**

In a suit to recover for drowning of mules and loss of wagon while being ferried across a river, where the principal issues related to the question as to whether the defendant was negligent in operating the boat without gates or barrier for the protection of stock or vehicles, and whether plaintiff was negligent in handling the mules, it was proper to show that the road on both sides of the river was public and was frequently traveled, and that all kinds of vehicles crossed on the ferry, and auto-

mobiles frequently made much noise when moving off the boat, and such facts were properly submitted to the jury on the question of what is due care, and what precautions were necessary for the protection of property ferried.

**7. Witnesses ☞287(1)—Evidence on redirect examination held relevant, in view of evidence brought out on cross-examination.**

In suit to recover for drowning of mules while being ferried across river, where the issue was whether defendant was negligent in operating a boat without gates or barrier, after plaintiff's witness had given testimony favorable to plaintiff's contention, and defendant elicited on cross-examination that witness had made trips through various states, that he was in the timber business, etc., it was not error to permit the witness on redirect examination to give the name of the concern with which he was connected, and to show that it was a large company and did an extensive business, by way of explanation of testimony elicited on cross-examination.

**8. Evidence ☞473—Error not predicated on witness' brief rendition of facts testified to.**

In a suit to recover for drowning of mules while being ferried across a river, plaintiff's witness having testified that he saw the mules when they became frightened and began to run backwards, and that plaintiff tried to hold them, testimony as to whether witness saw plaintiff do anything to those mules, that he did nothing more than try to keep them out of the river, was merely a shorthand rendition of the facts just the moment before testified to.

**9. Evidence ☞553(4)—Hypothetical question not supported by proof.**

In suit to recover for mules drowned while being ferried across a river, where there was no evidence to show that the mules had been struck across the nose, or about the nose, with a whip at the time when plaintiff was endeavoring to control them, and just before they backed into the river, a hypothetical question that, if mules should be struck across the nose they would become frightened, was not supported by proof.

**10. Witnesses ☞286(2)—Redirect examination of witness on assumed fact held within court's discretion.**

In suit to recover for mules drowned while being ferried across a river, where witness, who stated on cross-examination that he had been crossing at this ferry all his life, and had never seen any guard at the rear end of the boat, nor any mules back off it, on redirect examination was asked if he was there when a certain horse fell into the river off the boat, an objection to this evidence as assuming a fact which had not been proven was properly overruled; it being within the trial court's discretion.

**11. Trial ☞62(2) — Evidence that plaintiff called on attorney immediately after accident admissible in rebuttal as to admissions of being at fault.**

In suit to recover for mules drowned while being ferried across a river, evidence that immediately after the accident plaintiff went to see the attorney representing him in the case was admissible in rebuttal of witness' testimony that on the night following plaintiff admitted to him that the loss of the mules was due to his own fault.

**12. Appeal and error ☞1060(1)—Argument of counsel as to noise made by automobile at ferry not reversible error.**

In suit to recover for mules drowned while being ferried across a river, statement of plaintiff's counsel in argument that he had seen some cars that "you would think it was a carload of tin cans all started to rolling at the same time," while rather an exaggerated statement, was not calculated to mislead or prejudice the jury, and reversible error could not be rested on the overruling of an objection to it.

**13. Evidence ☞7—Noise of some automobiles matter of common knowledge.**

The amount of noise made by some automobiles may be said to be a matter of common knowledge.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Action for damages by Ab. H. McKinney against James H. Hilburn. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

Pleas 3 and 6 are as follows:

"(3) The defendant, for further answer to the complaint and each count thereof, says that the plaintiff contributed to the injury and loss of said mules, wagon, and harness in that he negligently fastened or hitched said mules to the wagon after the ferryboat had landed on the north side of the river without calling upon him to help him or aid him to control said mules, then and there well knowing they were easily frightened, shy, and unruly, and unmanageable."

"(6) For further answer to each count of the complaint separately the defendant says that the plaintiff contributed by his own negligence to the loss and destruction of said mules, wagon, and harness, in that he negligently and improperly attempted to control said mules, and by his own negligent and improper act in holding, hitching, or attempting to hitch or hold them, frightened said mules and caused them to run backwards and become uncontrollable, and without any fault and neglect on the part of defendant fall into the river."

Defendant objected to the following portion of the argument of plaintiff's counsel:

"I have seen some cars that you would think it was a carload of tin cans all started to rolling at the same time."

John A. Lusk & Son and C. B. Kennamer, all of Guntersville, for appellant.

Whether a ferryboat should be equipped with a certain kind of apparatus is a question to be determined by the commissioners.

Gillette v. Goodspeed, 69 Conn. 363, 37 Atl. 973; Code 1907, § 3024. The operator of a free ferry boat, who is hired by the county, is liable to free passengers for only gross negligence. Frierson v. Frazier, 142 Ala. 232, 37 South. 825; Age-Herald v. Waterman, 188 Ala. 273, 66 South. 16, Ann. Cas. 1916E, 900; Dudley v. Camden & P. Ferry Co., 42 N. J. Law, 25, 36 Am. Rep. 501; Foster v. Essex Bank, 17 Mass. 479, 9 Am. Dec. 168; Harvey v. Rose, 26 Ark. 3, 7 Am. Rep. 595. A ferrier is not responsible for loss of goods, unless complete control is intrusted to him. Frierson v. Frazier, supra; Moore on Carriers, 133.

Street & Bradford, of Guntersville, for appellee.

In this case, as averred, the duty was on the defendant to provide and keep a boat in safe condition. Sanders v. Young, 1 Head (Tenn.) 219, 73 Am. Dec. 175. And it was negligence as a matter of law for defendant to fail to provide a barrier. 19 Cyc. 510; Clark v. Union Ferry Co., 35 N. Y. 485, 91 Am. Dec. 66; Ferris v. Union Ferry Co., 36 N. Y. 312; Miller v. Pendleton, 8 Gray, 547; Wilson v. Hamilton, 4 Ohio St. 722; Dudley v. Camden & P. Ferry Co., 42 N. J. Law, 25, 36 Am. Rep. 501; Sanders v. Young, 1 Head (Tenn.) 219, 73 Am. Dec. 175; Wyckoff v. Queens County, 52 N. Y. 36, 11 Am. Rep. 650; Ring v. Cohoes, 13 Hun, 87; Lewis v. Smith, 107 Mass. 334; Walker v. Jackson, 10 Mees. & W. 161. So far as a ferryman holds himself out as ready to serve all who apply, for compensation, he is a common carrier. 14 Cyc. 508. Sudden and unusual noises are calculated to frighten live stock, and ferrymen are required to anticipate this danger and provide reasonably against it. Sturgis v. Kountz, 165 Pa. 358, 30 Atl. 976, 27 L. R. A. 390.

GARDNER, J. Plaintiff, appellee here, brought suit to recover damages resulting from the drowning of two mules and the loss of the wagon and harness while such property was being ferried across the Tennessee river at Gunters' Landing. This is the second appeal. Hilburn v. McKinney, 204 Ala. 158, 85 South. 496.

[1] The first assignments of error treated in brief relate to the action of the court in overruling the demurrer to counts 17 and 18. The negligence relied upon in these counts is the alleged failure of the defendant to furnish a safe boat for the transportation of its passengers and freight, in that the boat was not provided with a gate or barriers to prevent animals from stepping or falling overboard.

Upon the former appeal it was pointed out that count 3, then under consideration, made no effort to charge the defendant with any duty to provide a boat. The counts in question, however, now specifically aver that the defendant was operating this public ferry under a contract with Marshall county, whereby the defendant agreed to provide a ferryboat, and keep the same in good repair and condition for transporting across the Tennessee river all citizens of Marshall county, their vehicles and animals, without charge. In consideration of these services the county agreed to pay the defendant the sum of $1,500 annually; and it is alleged that plaintiff was a citizen of said county. It therefore appears that counts 17 and 18 met the defect pointed out on former appeal, and are not subject to the demurrer.

In the case of Gillette v. Goodspeed, 69 Conn. 363, 37 Atl. 973, cited by counsel for appellant, the boat was equipped with certain appliances for the protection of animals and vehicles, and it was held that under the law of Connecticut the character of equipment was a matter resting within the judgment of the commissioners whose duty it was to inspect and pass upon such matters, and such commissioners having deemed these appliances sufficient, the ferryman was not guilty of negligence in failing to provide other and different appliances. The case there presented is therefore easily distinguishable from the instant case.

[2] Plea 5 denied recovery for the sole reason plaintiff is alleged to have retained control of his mules and wagon, and was in control thereof at the time of the accident. While this might lessen the degree of care of defendant, clearly it would not be a complete defense to counts 17 and 18. Frierson v. Frazier, 142 Ala. 232, 37 South. 825.

[3] The sixth plea purports to be a plea of contributory negligence, but states many conclusions without a sufficient statement of facts in support thereof, and was therefore defective, as has been frequently decided by this court.

[4] The third plea also purports to be a plea of contributory negligence. No sufficient facts are alleged to show a duty on the part of plaintiff to call on this defendant for assistance, and for aught that appears plaintiff had ample assistance from others. Moreover, it is not alleged the defendant was ignorant of the disposition of the mules and of the danger, and no necessity shown that his attention be directed thereto.

[5] In support of pleas 4 and 7 counsel also cite the case of Frierson v. Frazier, supra, among other authorities, to the point that, as no compensation was exacted from the plaintiff, the defendant would only be liable for the consequences of gross negligence. This insistence is rested upon the theory the services were gratuitous. This, however, is refuted by the averments of counts 17 and 18, showing the consideration was paid by the county to the defendant for

the purpose of operating this public ferry for the benefit of the citizens of the county.

[6] The principal issues of fact upon which the case went to the jury related to the question as to whether or not the defendant was negligent in operating this boat without any gate or barrier for the protection of stock or vehicles, and also whether the plaintiff was guilty of contributory negligence in the management of his stock. We are of the opinion, upon the issue of fact first presented, the plaintiff was properly permitted to show that the road on both sides of the river was a public road, known as the Jackson Highway, crossing the Tennessee river; that it leads to Huntsville, Scottsboro, Albertville, Boaz, Gadsden, and Birmingham; that it was a frequently traveled road, and that of late years there had been a large increase in the travel; that all kinds of vehicles crossed on the ferry, and the automobiles frequently made much noise when moving off the boat. The jury, in the ascertainment of the question of what is due care, and what precautions were necessary to be observed by the ferryman for the protection of stock and vehicles, were properly permitted to consider all these facts, which we think were relevant and material to that end. The authorities cited under the several assignments of error, under which the foregoing questions are presented, have been considered; but we do not think they are applicable to the situation here presented, or militate against the conclusion here reached.

[7] Plaintiff introduced one Kendall as a witness, whose testimony was favorable to the plaintiff's contention. Defendant elicited on cross-examination of this witness that he had made trips from Huntsville to Louisiana, Chicago, California, Seattle, and points in Tennessee; that he was in the timber business, and that he was connected with mills in various parts of the country; and, on redirect examination, the court permitted the plaintiff, over defendant's objection, to give the name of the concern with which he was connected, to show that it was a very large company, and did quite an extensive business. We are of the opinion the testimony offered by the plaintiff on redirect examination was properly admitted by way of explanation of the evidence elicited from this witness on cross-examination by this defendant. As original evidence, it would doubtless have been entirely irrelevant, but became relevant by reason of the testimony brought out on cross-examination. In this there was no error.

[8] One Cornelius, witness for the plaintiff, testified that he saw plaintiff's mules when they became frightened and began to run backwards, and that plaintiff tried to hold them; that "the mules started forward and one of them backward, and the plaintiff went around and got the mules by the bits, * * * took the mule by the bridle close to the bit, and they went off into the river." The witness was then asked, "Did you see him do anything to those mules?" to which he replied, "Nothing more than try to keep them out of the river." To this last answer the defendant objected, and moved to exclude, because it was a conclusion, and not a response to the question. The court overruled the motion, and exception was reserved. Whether or not this answer was objectionable, upon either of the grounds stated, we need not determine, as it too clearly appears that the witness was merely giving a shorthand rendition of facts just the moment before testified to by him, and in no event could reversible error be rested upon this assignment.

[9] Plaintiff testified that he had no whip in his hands but it was tied about his shoulders and body. Witness Chandler testified that the "whip was wrapped across plaintiff's shoulders and the handle hung down in front of him." Defendant offered to show by this witness that under such circumstances, in handling mules or holding them, that if either by design or accident the mules should be struck across the nose, or about it, "they would become frightened," to which objection of the plaintiff was sustained. Counsel cited in support of this insistence the case of Darling v. Westmoreland, 52 N. H. 401, 13 Am. Rep. 55, which we have read with interest. Doubtless this hypothetical question embraced a matter of common knowledge, but whether so or not, at that time we do not find there had been any proof to show the mule had been struck "across the nose or about the nose," and the hypothetical question was not supported by the proof.

[10] Defendant by way of cross-examination proved by the witness Chandler that he had been crossing at this ferry all his life, and had never seen any pole, chain, or gate at the rear end of the boat, nor had he seen a pair of mules, a single mule, horse, or ox back off the boat. On redirect examination the witness was asked if he was there at the time Dr. Lusk's horse fell in the river off the boat. The defendant's objection being overruled, the witness answered, "No; I was not there." It is urged this evidence is objectionable, as assuming a fact which had not been proven. In view of the cross-examination, we are persuaded that this question was largely a matter resting within the discretion of the trial court, and that no reversible error appears. Fleming v. State, 150 Ala. 19, 43 South. 219. In the Fleming Case the ruling was by way of sustaining the action of the court below; so, also, in Alabama Lbr. Co. v. Cross, 152 Ala. 562, 44 South. 563, 126 Am. St. Rep. 55. Moreover, the witness answered in the negative, and we do not see that the defendant has suffered any injury.

[11] One Kirkland testified for the defendant that on the night following the injury plaintiff admitted to him that the loss of

the team was due to his own fault. This was emphatically denied by the plaintiff. In rebuttal, plaintiff was permitted to show that on the day the accident occurred, and before he went home that night, he went to Guntersville to see the attorney who represents him in this cause. There was no testimony in regard to any conversation between plaintiff and the attorney, and we are of the opinion the fact that he went to see his attorney so soon after the accident was properly admitted as a circumstance by way of rebuttal of the testimony of witness Kirkland.

[12, 13] We do not consider that reversible error could be rested upon the overruling of the objection to the argument of counsel for plaintiff, which bore upon the amount of noise made by some automobiles. It was a rather exaggerated statement, and in the strict sense subject to some objection; but we do not think that in the instant case it was calculated to mislead or prejudice the jury in any respect. Indeed, the amount of noise made by some automobiles may be said to be a matter of common knowledge. The case of Edwards v. Earnest, 206 Ala. 1, 89 South. 729, 22 A. L. R. 1387, presents an entirely different character of argument.

The matter of burden of proof had been fairly presented to the jury by the oral charge of the court, and no reversible error could be rested upon the action of the court in the refusal of charge 11.

Refused charges 14 and 22, constituting assignments of error 75 and 83, are rested upon the assumption that the services rendered plaintiff were gratuitous. The services were rendered and paid for by the county for the benefit of its citizens, of which plaintiff was one, and were therefore not gratuitous.

We have here considered the material questions presented, and, finding no reversible error, the judgment of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.